IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

:

SANDRA LYNN VON LOETZEN BENNIE
                                    :

v.                                  : Civil Action No. DKC 2006-1182
                                    :

GENERAL MOTORS
                                    :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this products liability case is the motion of Defendant General Motors Corporation ("GM") for summary judgment pursuant to Fed.R.Civ.P. 56. The issues are fully briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, the motion will be granted.

**I. Background**

**A. Factual Background**

The following facts are taken in the light most favorable to Plaintiff, Sandra Lynn von Loetzen Bennie, the party opposing the motion for summary judgment. Plaintiff is an individual residing in Maryland. Defendant is a Delaware corporation with its principal place of business in Detroit, Michigan.

On February 24, 2003, at approximately 3:00 p.m., Plaintiff was injured when the air bag in her 1994 Buick Regal unexpectedly deployed. At the time of the incident, Plaintiff was driving approximately five miles-per-hour as she neared a parking lot in

McLean, Virginia.  (Paper 2, at 1).[1]  There was no impact or
collision between Plaintiff's vehicle and any other vehicle or
structure.  Plaintiff was seated close to the steering wheel, and
the air bag hit her in the face, neck, and chest area at
approximately 200 miles-per-hour.  Plaintiff was unable to see in
front of her, but "impulsively" turned off the ignition switch.
(Paper 2, at 11).  Although an ambulance came to the scene,
Plaintiff refused to be transferred to the hospital for fear that
her car would be towed, and because she did not have health
insurance.  (Paper 48, at 4).

After the incident, once Plaintiff was able to walk, she went
to the Allstate insurance office located in the parking lot where
the incident occurred.  Plaintiff spoke with an insurance agent
from that office.  Agent Peeples told Plaintiff that an air bag
explosion without any collision is a manufacturer's defect and is
the responsibility of the manufacturer.[2]  He made an appointment
for March 5, 2003, for Plaintiff to see another Allstate agent.
(Paper 48, at 5).

Plaintiff remained at her son's home, which was closer to the
incident than was her own, until March 5, 2003.  On that date, she

---

[1] Plaintiff's amended complaint, like several of her other
documents, does not include page numbers.  Where possible, the
court will refer to pages in these documents in the order in which
they were submitted to the court.

[2] Plaintiff does not give Agent Peeples's first name.

2

visited the Chantilly garage, where her car was inspected by Allstate agent Manny Aguilar. (Paper 48, at 6-7). Although Plaintiff asserts that Mr. Aguilar stated that the air bag explosion was considered by Allstate to be a manufacturer's defect, the only documentation in the record stops far short of that conclusion. The letter purportedly written by Mr. Aguilar merely states that his inspection "revealed no signs of impact to the body or undercarriage of the vehicle to support the engagement of the airbag sensors." (*Id.*; Paper 47, Ex. 1, Aguilar letter). As a result, Plaintiff's full coverage insurance with Allstate would not cover the repairs needed for her car or her medical expenses. (Paper 2, at 7).

On March 5, 2003, Plaintiff also went to the emergency room at Fair Oaks Hospital in northern Virginia, where she was diagnosed with chest and head contusions. (Paper 2, at 9). Plaintiff complains of several other serious injuries as a result of the air bag deployment, including the loss of several teeth, an inability to move her head from side-to-side, severe nausea and headaches, and aggravated neck injury. In addition, Plaintiff was diagnosed with a loss of hearing in her right ear. An X-ray suggested that a chemical released from the air bag upon deployment was responsible for clogging her ear, and that it would require surgery and possibly a hearing aide. Finally, Plaintiff has experienced blurriness of vision since the incident. (Paper 2, at 9-15).

Plaintiff filed a claim with GM during March or April of 2003. That claim was handled by Bradley Evans, a Claims Administrator with ESIS, which handles product liability claims against GM. (Paper 46, attached letter from Bradley Evans).  As a result, Plaintiff's car was inspected by a GM investigator, Pat Burley, on April 28, 2003.  (Paper 45, at 7).  According to Plaintiff, Mr. Burley stated that he had investigated a similar air bag deployment one week beforehand, and that he planned to recommend a recall to GM.  (Paper 46, copy of submissions to Magistrate Judge Connolly, at 4).  The claim was not resolved.

**B. Procedural Background**

Plaintiff, proceeding *pro se*, filed an amended complaint against General Motors in the Circuit Court for Montgomery County, Maryland, on March 16, 2006.[3]  (Paper 2).  The complaint and amended complaint were served on Defendant on April 18, 2006.  On May 11, 2006, Defendant filed a notice of removal to this court, asserting that removal was proper under 28 U.S.C. § 1332(a) based upon diversity of citizenship and an amount in controversy greater than $75,000. (Paper 1).

After discovery and failed attempts to settle the case, Defendant filed this motion for summary judgment on February 9, 2007, alleging that Plaintiff failed to produce evidence that would

___
[3] Plaintiff filed her original complaint on February 24, 2006. (Paper 1, at 1).

support a *prima facie* case that her 1994 Buick Regal was defective, or that any alleged defect was present at the time the car left General Motors. (Paper 38, at 4). In particular, Defendant noted Plaintiff's admission that, at the time of the incident, the vehicle had been driven approximately 110,000 miles and had at least two previous owners. (*Id.* at 1-2; Paper 39, Exhibit C, Allstate Insurance Company estimate; Exhibit D, copies of previous ownership documents). In addition, Defendant alleged that Plaintiff failed to produce any evidence or identify any experts who would testify that the car did not comply with applicable government and industry standards.[4] Finally, Defendant alleged that Plaintiff had not identified any experts who would testify regarding the nature of the alleged defect. (*Id.* at 1-2).

Plaintiff filed her response to Defendant's motion for summary judgment on April 6, 2007, with an addendum on April 9, 2007.[5] (Papers 45 and 46). In these documents, Plaintiff argued that the air bag deployment must have been the result of a defect and thus she was entitled to relief. Plaintiff also responded that she had several witnesses who would testify, or whose affidavits she had

---

[4] Defendant's contention that the 1994 Buick Regal complied specifically with Federal Motor Vehicle Safety Standard 208 ("FMVSS 208") for air bags is misleading. FMVSS 208 did not set any standards for air bags in vehicles manufactured in 1994. In fact, that section's first air bag standards apply to cars manufactured on or after September 1, 1996. 49 C.F.R. § 571.208 S4.1.5.2.1.

[5] The Court granted Plaintiff's motion for an extension of time to file the response on March 1, 2007. (Paper 44).

requested.  These included Mr. Peeples, the insurance agent at the
scene of the air bag deployment, Mr. Aguilar, the Allstate agent
who inspected her car, Mr. Burley, the GM agent who also inspected
the Buick, and several doctors who would testify to her injuries,
the required medical treatments, and the resulting expenses.
(Paper 45, at 1-4, 10).  Plaintiff also included several exhibits
discussing problems with air bags and recalls within the industry;
however, none of these involved the air bag system in her 1994
Buick Regal.  Plaintiff made no mention of previous owners of her
vehicle, or of relevant safety standards at the time her Buick was
manufactured.

Defendant filed its reply to Plaintiff's opposition to the
motion for summary judgment on April 20, 2007.  (Paper 47).
Defendant challenged the admissibility of Plaintiff's recollection
of Mr. Peeples's statements, as well as the admissibility of Mr.
Aguilar's testimony as an expert opinion. (*Id.* at 2-3).

Plaintiff filed an addendum to her opposition to  Defendant's
motion for summary judgment on May 29, 2007.  (Paper 48).  The
addendum noted that Plaintiff had requested affidavits from another
GM Agent, Ms. Roach, who apparently took over her claim after Mr.
Evans left ESIS.  Plaintiff stated that she requested all of GM's
files on cases relating to air bag explosions between 1993 and the
present, but had not received them.  (Paper 48, at 14).  Finally,
Plaintiff included a pain and suffering addendum to her damages

request, referring to her deposition indicating the extent of her injuries and their impact on her daily life.  (Paper 48).

## II. Standard of Review

It is well established that a motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In other words, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate.  *Anderson*, 477 U.S. at 250; *see also Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrison v. Nissan Motor Co.*, 601 F.2d 139, 141 (4th Cir. 1979).  The moving party bears the burden of showing that there is no genuine issue as to any material fact and that he is entitled to judgment as a matter of law.  *See* Fed.R.Civ.P. 56(c); *Catawba Indian Tribe of S.C. v. South Carolina*, 978 F.2d 1334, 1339 (4th Cir. 1992), *cert. denied*, 507 U.S. 972 (1993).

When ruling on a motion for summary judgment, the court must construe the facts alleged in the light most favorable to the party opposing the motion.  *See United States v. Diebold*, 369 U.S. 654, 655 (1962); *Gill v. Rollins Protective Servs. Co.*, 773 F.2d 592, 595 (4th Cir. 1985).  A party who bears the burden of proof on a

particular claim must factually support each element of his or her claim. "[A] complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 323. Thus, on those issues on which the nonmoving party will have the burden of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence in order to show the existence of a genuine issue for trial. *See Anderson*, 477 U.S. at 256; *Celotex Corp.*, 477 U.S. at 324. However, "[a] mere scintilla of evidence in support of the nonmovant's position will not defeat a motion for summary judgment." *Detrick v. Panalpina, Inc.*, 108 F.3d 529, 536 (4th Cir.), *cert. denied*, 522 U.S. 810 (1997). There must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

## III. Analysis

A federal district court exercising diversity jurisdiction applies the choice of law principles of the forum in which it sits. *Limbach Co. v. Zurich Am. Ins. Co.*, 396 F.3d 358, 361 (4th Cir. 2005) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97 (1941)). Thus, this court will apply Maryland's choice of law principles to this case. In tort cases, Maryland applies the maxim of *lex loci delicti* ("the law of the place of the harm").

*Hauch v. Connor*, 295 Md. 120, 123 (1983); *Wells v. Liddy*, 186 F.3d 505, 521 (4th Cir. 1999), *cert denied*, 528 U.S. 1118 (2000).  In this case, the air bag deployed in Virginia, and so Virginia substantive law applies to Plaintiff's claims.

It is not entirely clear whether Plaintiff brings her claim under a strict liability or a negligence theory.  However, any argument that strict liability should apply in this case is unavailing.  "Virginia law has not adopted § 402A of the Restatement (Second) of Torts and does not permit tort recovery on a strict-liability theory in products-liability cases." *Sensenbrenner v. Rust, Orling & Neale, Architects, Inc.*, 236 Va. 419, 424 n.4 (1988).  Thus, the sole question is whether a material question of fact exists on a negligence claim.

Plaintiff appears to contend that her negligence claim is supported by either the doctrine of *res ipsa loquitur* ("the thing speaks for itself") or products liability law.  Plaintiff's claim fails under either theory because there is no genuine issue of fact as to whether the car was in Defendant's exclusive control at the time the air bag deployed.  This is an essential element of both the *res ipsa loquitur* doctrine and the test for products liability.

As will be seen, the doctrine of *res ipsa loquitur*, which sometimes provides an inference of negligence, does not apply to Plaintiff's case.  While the substantive law of Virginia is applicable, "the sufficiency of evidence and permissibility of

inferences are to be determined by the law of the forum, generally, and in *res ipsa loquitur* situations." *Harrison v. Bill Cairns Pontiac of Marlow Heights, Inc.*, 77 Md.App. 41, 47-48 (1988) (citing *Joffre v. Canada Dry, Inc.*, 222 Md. 1, 7 (1960)).   Hence, Maryland law dictates whether Plaintiff may rely on the theory of *res ipsa loquitur* to supply an inference of negligence.   In Maryland, a plaintiff must prove the following elements to rely successfully on that doctrine:

> 1. A casualty of a sort which usually does not occur in the absence of negligence,
> 2. Caused by an instrumentality within the defendant's exclusive control,
> 3. Under circumstances indicating that the casualty did not result from the act or omission of the plaintiff.

*Harrison,* 77 Md.App. at 48 (citing *Giant Food, Inc. v. Wash. Coca Cola Bottling Co.*, 273 Md. 592, 597 (1975)).   Maryland courts do not apply the "exclusive control" test literally; however, the plaintiff must produce "sufficient evidence tending to eliminate other causes, such as the absence of negligence, negligence of third parties, or the plaintiff's own alteration or misuse." *Harrison*, 77 Md.App. at 48 (citing *C & P Tel. Co. of Md. v. Hicks*, 25 Md.App. 503, 531-33 (1975)).   Essentially, a plaintiff arguing *res ipsa* must show that no one interfered with the instrumentality that caused the injury after it left the defendant's hands; thus, the accident must have been the defendant's fault.

This requirement for *res ipsa* mirrors one element of the test for products liability.  Virginia products liability law requires that a plaintiff prove that the product contained a defect which rendered it unreasonably dangerous for ordinary or foreseeable use; that the defect existed when it left the defendant's hands; and that the defect actually caused plaintiff's injury.  *Alevromagiros v. Hechinger Co.,* 993 F.2d 417 (4th Cir. 1993) (citing *Marshall v. H.K. Ferguson Co.*, 623 F.2d 882, 885 (4th Cir. 1980)(internal citations omitted)).  Because both the *res ipsa loquitur* doctrine and the products liability test require a plaintiff to prove that the defect existed when it left the defendant, and has not been caused by a third party, the theories may be analyzed together.

It is undisputed that Plaintiff's car was nine years old and had been driven roughly 110,000 miles at the time of the incident.  These numbers alone cast significant doubt as to whether the alleged defect existed when Plaintiff's car left Defendant's hands.  Many if not most successful products liability claims are based on accidents that occur within months of the product's original purchase.  *See Harrison*, 77 Md.App. at 52 (1988) (listing cases in several circuits in which evidence of an electrical short or an electrical fire was sufficient to raise an inference of a product defect within eight and one-half months of the purchase of the vehicle); *Logan v. Montgomery Ward & Co., Inc*., 216 Va. 425, 427 (1975) (noting that the movement of a stove by an installer within

one month of purchase was sufficient to cast doubt upon the existence of a defect when the stove left the manufacturer). Similarly, as Professor Prosser has noted:

> There is first of all the question of lapse of time and long continued use. . . when there is no such definite evidence [of an original defect], and it is only a matter of inference from the fact that something broke or gave way, the continued use usually prevents the inference that more probably than not the product was defective when it was sold. It has been said many times that the seller does not undertake to provide a product that will not wear out.

*Harrison*, 77 Md.App. 41, 53 (quoting Prosser, *Law of Torts* § 103, at 674 (4th ed. 1971)).

In addition to noting the length of time since purchase, Defendant has offered evidence that the Buick Regal had two previous owners before Plaintiff, thereby demonstrating that the car was not in Defendant's exclusive control at the time of the incident. Naturally, the previous owners, or Plaintiff, may have repaired or modified the air bag system during their ownership. At any point during its 110,000 miles, three owners, and nine years, the car may have been tampered with or simply worn down.

To survive a motion for summary judgment, Plaintiff was required to rebut Defendant's showing, offering at least some evidence that the air bag system was not altered since it left Defendant's hands. Despite this requirement, Plaintiff has not, for instance, produced any history or documentation of previous

12

accidents or repairs to the car, either during her ownership or that of the previous owners.  While Plaintiff has identified an expert, Mr. Aguilar, who will testify that there was no collision to cause the air bag deployment, she has not offered anyone to testify as to the nature of the alleged defect, or that it existed when the car left GM.  As the *Logan* court noted, "[t]he mere fact of an explosion does not establish the negligence . . . of the manufacturer . . . and does not establish that the [product] was defective." *Logan*, 216 Va. at 428 (refusing to find that defect existed when stove left manufacturer where stove exploded one month after purchase).

Plaintiff attempts to rebut Defendant's argument that she cannot show that a defect existed when the car left GM by establishing a pattern of unprovoked air bag deployments among 1994 Buick Regals.  In this effort, Plaintiff offers several documents discussing recalls of other cars and GM model years because of air bag defects.  As Defendant notes, however, none of these recalls applies to her 1994 Buick Regal.  In particular, Plaintiff admitted that the 1995 Buick Regal, which was recalled because of an air bag defect, used a different air bag system than did the 1994 model. (Paper 45, Letter to Chambers dated April 5, 2007, at 2-3).  In addition, Plaintiff provides her own recollection of Mr. Burley's statement that he had seen another, similar case the week before he examined her car.  (Paper 46, Copy of Submissions to Magistrate

Judge Connolly, at 4).  Even if this statement were admissible, which is not clear, Plaintiff has provided no evidence as to whether the other car was a 1994 Buick Regal, the number of miles or previous owners it had, or the circumstances surrounding the deployment of its air bag.  Without more, the vague mention of one additional incident in the twelve years between the car's manufacture and this suit does not provide even a "scintilla" of evidence that a defect existed when Plaintiff's 1994 Buick Regal left GM.

In short, Defendant has demonstrated that there is no genuine issue of material fact as to whether Plaintiff can establish a critical element of any claim, namely that the alleged defect existed when the car left Defendant's hands.  Because Plaintiff would be unable to prevail at trial, Defendant is entitled to judgment as a matter of law.

**IV. Conclusion**

For the foregoing reasons, Defendant's motion for summary judgment will be granted.  A separate Order will follow.


_____/s/_____
DEBORAH K. CHASANOW
United States District Judge

14